No. 105,077

STATE OF KANSAS, *Appellee,* v. ROBERT F. SMYSER, *Appellant.*

(299 P.3d 309)

Opinion filed April 26, 2013.

*Meryl Carver-Allmond,* of Capital Appellate Defender Office, was on the briefs for appellant.

*Kristafer R. Ailslieger,* deputy solicitor general, and *Derek Schmidt,* attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Robert F. Smyser appeals his conviction for aggravated criminal sodomy. He asserts four issues: (1) an alternative means argument based upon K.S.A. 21-3501(2), which is the statutory definition for criminal sodomy; (2) whether a jury instruction incorrectly recited the State's burden of proof; (3) whether the sentencing court erred by imposing electronic monitoring and an order for no contact with the victim; and (4) whether the sentencing court erred in imposing BIDS attorney fees without considering Smyser's ability to pay. We affirm Smyser's conviction. We remand the BIDS portion of Smyser's sentence to the district court for additional findings and vacate the electronic monitoring and no-contact conditions.

## Factual and Procedural Background

The facts necessary to consider the arguments on appeal may be briefly stated. Smyser was charged with the April 2008 aggravated criminal sodomy of his 7-year old stepdaughter, K.S.

At trial, K.S.'s mother testified that K.S. told her Smyser—whom K.S. referred to as "daddy"—had slept with her the night before, rubbed lotion on her bottom, and wiped it off with a washcloth. After noticing K.S.'s bottom was red and had tears around the rectum, the mother took K.S. to the hospital. An investigating officer who met with K.S. testified the girl told him her "daddy slept with her, put lotion on her butt, put a blanket over her head to keep her quiet," and "put his private part in her butt."

A sexual assault nurse examiner performed a SANE/SART exam and testified at trial. The nurse described how K.S. told her that the night before the exam, when K.S.'s mother and brothers were sleeping, her dad woke her up, and was "checking my bottom with his wiener. He was touching me with it on my bottom." The nurse testified that during the exam she did not find any injury to the child's vagina but found fresh injuries, including multiple tears, to her anus. The nurse said she concluded these injuries were consistent with anal penetration.

K.S. also testified at trial, describing how Smyser "put his penis into my penis, and then he put his penis in my bottom." When asked, K.S. said she knew what her vagina was and that it was different from her bottom.

Smyser did not testify. The jury found him guilty of aggravated criminal sodomy. He filed a timely notice of appeal. This court's jurisdiction is proper under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

## Alternative Means

Smyser argues that because aggravated criminal sodomy, as charged and instructed in his case, could be committed by (1) anal penetration by a body part or (2) anal penetration by an object, an alternative means issue is presented. See K.S.A. 21-3501(2). He asserts there was insufficient evidence to prove penetration by an

object, so he was denied his statutory right to a unanimous jury verdict under K.S.A. 22-3421.

This court addressed, and rejected, an identical argument in *State v. Burns*, 295 Kan. 951, 963-64, 287 P.3d 261 (2012). In that case, we held that the anal penetration charged, which was based upon the definition in K.S.A. 21-3501(2), only presents options within a means—that is, various factual circumstances that would prove the crime without creating an alternative means problem. 295 Kan. at 964. The jury in Smyser's case was instructed that Smyser was charged with aggravated criminal sodomy and was given the elements the State needed to prove to establish that crime. The applicable instruction read:

"The defendant is charged with aggravated criminal sodomy. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant engaged in sodomy with a child, to wit: [K.S.], who was under 14 years of age; and

"2. That the defendant was at least 18 years of age when the act of sodomy occurred; and

"3. That the act occurred on or between the 4th day of April, 2008, and the 7th day of April, 2008, in Marion County, Kansas.

"Sodomy means anal penetration, however slight, of a male or female by *any body part or object.*" (Emphasis added.)

Aggravated criminal sodomy is defined by K.S.A. 21-3506(a)(1) as sodomy with a child who is under 14 years of age. The definition of sodomy in K.S.A. 21-3501(2) provides that sodomy "means oral contact or oral penetration of the female genitalia or oral contact of the male genitalia; *anal penetration, however slight, of a male or female by any body part or object*; or oral or anal copulation or sexual intercourse between a person and an animal." (Emphasis added.) The defendant in *Burns* was charged under the same statutes as Smyser. In *Burns*, we rejected the alternative means argument and explained:

"[E]ach act described within the definition of sodomy is separate and distinct from the other—the acts are factually different from one another, and one act is not inclusive of the others. Furthermore, each act is separated by a semicolon, which suggests that the legislature intended for each act to constitute a specific means of completing the general act of sodomy.

"The *actus reus* of aggravated criminal sodomy under K.S.A. 21-3506(a)(1) is the defendant's act of sodomy with a child who is under 14 years of age. The definition in K.S.A. 21-3501(2) creates three alternative means of committing sodomy, but within the second alternative means, the anal penetration charged here, the definition only presents 'options within a means,' that is, various factual circumstances that would prove the crime.

"In the phrase 'anal penetration, however slight, of a male or female by any body part or object,' the legislature did not define two or more distinct *actus reus* for this crime. The language on which Burns focuses, 'by any body part or object,' merely describes different factual circumstances by which a defendant might perpetrate the required anal penetration. The inclusion of 'by any body part or object' does not state material elements of sodomy but merely gives a full description of one of the means of committing sodomy; thus, it does not establish two alternative means of committing anal sodomy. Instead, the phrase only establishes one means of committing sodomy—anal penetration. The language 'by any body part or object' does not establish alternative means, but options within a means. Therefore, the inclusion of this language in the jury instructions does not make this an alternative means case and does not trigger concerns of jury unanimity." 295 Kan. at 963-64.

Smyser concedes in his appellate brief that there was evidence of anal penetration by a body part to support his conviction absent the acceptance of his alternative means argument. As a result, Smyser is not entitled to reversal of his convictions for aggravated criminal sodomy based on this argument.

## REASONABLE DOUBT JURY INSTRUCTION

Smyser filed a supplemental brief arguing for the first time on appeal that the district court erred by providing the jury with an instruction that he claims lowered the State's burden of proof. Smyser asserts this resulted in structural error, relying on the Court of Appeals opinion in *Miller v. State*, No. 103,915, 2012 WL 401601 (Kan. App. 2012) (unpublished opinion), *rev. granted* March 4, 2013, to support this position.

### Standard of Review

This court recently explained the analytical framework for instructional issues and the corresponding standards of review:

"For jury instruction issues, the progression of analysis and corresponding standards of review on appeal are: (1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, ex-

ercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012).

A party cannot claim error for the district court's giving or failing to give a jury instruction unless (1) that party objects before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds for objection; or (2) the instruction or the failure to give the instruction is clearly erroneous. If an instruction is clearly erroneous, appellate review is not predicated upon an objection to the trial court. *State v. Williams*, 295 Kan. 506, Syl. ¶ 3, 286 P.3d 195 (2012), accord K.S.A. 22-3414(3).

Smyser concedes he did not object to the challenged instruction at trial, so we determine whether the challenged instruction was clearly erroneous using a two-step process. First, the appellate court must "determine whether there was any error at all. To make that determination, the appellate court must consider whether the subject instruction was legally and factually appropriate, employing an unlimited review of the entire record." *Williams*, 295 Kan. 506, Syl. ¶ 4. If the court finds error, it moves to the second step and "assesses whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The party claiming a clearly erroneous instruction maintains the burden to establish the degree of prejudice necessary for reversal." *Williams*, 295 Kan. 506, Syl. ¶ 5.

The challenged instruction in Smyser's case was identical to the pre-2004 PIK instruction amendment. See PIK Crim. 3d 52.02 (1999 Supp.). It stated:

"The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of *any* of the claims

required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

Smyser claims this instruction is erroneous because the use of the word "any" in the final sentence of the instruction communicated to the jury that it could find Smyser guilty by only finding proof beyond a reasonable doubt of only one of the claims required to be proved by the State. In other words, Smyser argues he should have been given the standard instruction recommended at the time of his trial under PIK Crim. 3d 52.02.

We recently considered this identical argument in *State v. Herbel*, 296 Kan. 1101, 299 P.3d 292 (2013). In that case, we determined that the same instruction, although not the preferred instruction, was legally appropriate. *Herbel*, 296 Kan. at 1124. The same is true in Smyser's case.

In *Herbel*, we rejected the defendant's attempt to compare the instruction language from *Miller* with the instruction provided at his trial. In *Miller*, the trial court transposed the words "each" and "any" in giving a jury instruction based on the current version of PIK Crim. 3d 52.02. The instruction in *Herbel* used "any" in both instances in the instruction. We determined these instructions differed sufficiently and that *Miller* did not provide an appropriate analytical comparison. *Herbel*, 296 Kan. at 1122-23.

Instead, the *Herbel* court adopted the reasoning employed in *State v. Beck*, 32 Kan. App. 2d 784, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). In *Beck*, the defendant objected at trial to the instruction contained in the then-recommended PIK Crim. 3d 52.02, which used the word "any" in the final sentence of the instruction, claiming it created ambiguity or could result in a conviction when only one element of the crime needed to be proved by the State. The *Beck* panel rejected the argument that the use of "any" in the context of the instruction "could somehow create ambiguity or result in Beck being convicted if only one element of the crime is proven." 32 Kan. App. 2d at 787. The panel further noted that any possible confusion was eliminated by the elements instruction that provided: "To establish this charge, *each* of the

following claims must be proved." (Emphasis added.) 32 Kan. App. 2d at 787-88.

Similarly, at Smyser's trial the aggravated criminal sodomy instruction began: "To establish this charge, *each* of the following claims must be proved:" (Emphasis added.) In keeping with *Beck* and *Herbel*, we hold that any possible confusion suggested by Smyser was eliminated by this introductory statement in the aggravated criminal sodomy elements instruction.

Our court's adoption of the *Beck* analysis in *Herbel* as to this issue resolves it against Smyser. We hold the reasonable doubt jury instruction was legally appropriate and not error.

### SENTENCING ISSUES

Smyser next raises two sentencing issues, both of which the State does not dispute. First, at the sentencing hearing, the district court imposed several conditions on Smyser's sentence, including that he be subject to electronic monitoring and have no contact with the victim. But this court has previously held that electronic monitoring and no-contact orders are not among the permitted dispositions. *State v. Beaman*, 295 Kan. 853, 870, 286 P.3d 876 (2012); *State v. Plotner*, 290 Kan. 774, 781-82, 235 P.3d 417 (2010). Likewise, a district court may not impose a no-contact order as part of sentencing, and doing so constitutes an illegal sentence. *Plotner*, 290 Kan. at 782. Accordingly, these portions of Smyser's sentence should be vacated. See 290 Kan. at 782.

Second, the district court imposed $500 in BIDS attorney fees without properly considering Smyser's ability to pay. At the time of Smyser's sentencing, BIDS fees were controlled by K.S.A. 21-4603d(i). District court judges have discretion in determining the amount of BIDS fees a defendant is assessed, along with discretion to waive part of or all of the fees. *State v. Phillips*, 289 Kan. 28, 42, 210 P.3d 93 (2009). But the court should consider the fees at the time it makes the assessment and must state on the record the factors it weighed in making its decision. *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006).

In this case, the district court did not weigh any reasons for assigning Smyser's BIDS fees on the record. It simply stated:

"The Court will assess to him, knowing that it's unlikely he's going to have the ability to pay this, but since we don't know what the future may bring, I think it is appropriate to assess the court costs in this matter, of $173, the . . . KBI DNA . . . database fee of $100; the BIDS fee of $100, along with the surcharge. Uh, at the request of the State, I will assess the $100 Child . . . Advocacy Center fee.

"With regard to attorney's fees, I'm going to assess a token amount, Mr. [defense attorney], of $500, knowing full well that that's not even close to what . . . your fee will be, uh, and not to speak to what you will actually be paid. Uh, but in the event that there should be some resources available, at least that would be $500 reimbursement to the State."

This court has held that because BIDS fees are not punitive or part of a sentence, the issue can be remanded to the district court for further findings in cases when the district court ordered BIDS attorney fees without considering the defendant's financial resources or the burden the payment would impose. *Phillips*, 289 Kan. at 43 (citing other cases in which this court remanded, including *State v. Johnson*, 286 Kan. 824, 852, 190 P.3d 207 [2008]; *State v. Stevens*, 285 Kan. 307, 330-31, 172 P.3d 570 [2007]).

Because the district court did not make proper findings when assessing Smyser's BIDS fees, the fee order is vacated and the issue is remanded to the district court for consideration of Smyser's financial situation and the burden payment would impose. See 289 Kan. at 43.

Affirmed in part, vacated in part, and remanded with directions.